# CROSS v. PHILLIPS.

PATENTS; REDUCTION TO PRACTICE; PRELIMINARY STATEMENT, AMENDMENT OF; APPEALS.

1. Testimony taken by a party to an interference to show reduction to practice prior to the date set forth in his preliminary statement, without amendment of such statement, is inadmissible and will not be considered.
2. The granting or refusal of leave to amend a preliminary statement is within the discretion of the Commissioner of Patents, the exercise of which is not reviewable in this court except possibly in case of palpable abuse.

3. When the Commissioner reserved the consideration of an application for leave to amend a preliminary statement in an interference proceeding until the hearing on the merits, and then determined it adversely to the applicant, it was *held* that the question of the right to amend was involved on an appeal by the applicant from the decision of the Commissioner awarding priority of invention to the rival applicant, but that, under the circumstances, it was rightly determined by the Commissioner.

4. A decision of the Commissioner of Patents in an interference proceeding holding that, although a patentee was the first to conceive the invention described in the patent, the junior and rival applicant was the first to reduce to practice, and that as the patentee was not reasonably diligent in reducing to practice, priority should be awarded his rival, *affirmed.*

No. 112. Patent Appeals. Submitted January 12, 1899. Decided February 8, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Richard N. Dyer* for the appellant.

*Mr. Fredk. P. Fish* and *Mr. Odin B. Roberts* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding between rival claimants of priority of invention of an improvement in coal-screens contained in the following issue as declared between them :

" 1. A metal screen having an integral web provided with substantially quadrilateral interstices, each interstice having two substantially parallel sides, and the other two sides bent or curved in opposite directions with relation to the working face, the interstices of one row being opposite to the portions of the web separating and forming the bent or curved sides of the interstices of the adjacent rows.

" 2. A metal screen having an integral web portion with rectangular interstices, two, opposite, sides of any one interstice being the one concave, and the other convex with relation to the working face."

The appellant, George W. Cross, has a patent for the invention of the issue, No. 523,515, granted July 24, 1894, upon an application filed March 26, 1894. The application of David E. Phillips, the appellee, was not filed until August 13, 1894, and the burden of proof was therefore imposed upon him.

The interference was declared upon the allowable application of Phillips November 9, 1894, and both parties were given the usual notice to file their sworn preliminary statements. These were filed on or about December 5, 1894.

Phillips' statement alleged conception September, 1891; disclosure, October, 1891; making model, October, 1891; sketches, fall of 1891, and reduction to practice November, 1893.

Cross, in his preliminary statement, alleged the following:

"I conceived the invention embraced in the issues as early as November 28, 1889, and made a drawing thereof as early as November 29, 1889, disclosed the invention to others as early as January 25, 1890, and a complete model illustrating and employing said invention was made as early as May 3, 1890. No apparatus employing the construction set forth in the issues was completed prior to the application for the patent in interference."

Phillips, under the burden of proof imposed upon him, began taking the depositions of witnesses in support of his statement on February 11, 1895, and ended the same on February 19, 1895. Further evidence was offered in rebuttal after the closing of the case on the part of Cross. Each tribunal of the Patent Office was of the opinion that this evidence clearly established the fact of Phillips' conception and reduction to practice substantially as alleged in his preliminary statement. Having carefully examined the testimony, we are entirely satisfied with the soundness of their several conclusions.

Having established reduction to practice upon a date preceding by about four months that alleged in his adversary's

statement, Phillips became entitled to the award of priority that was afterwards made to him.

Without offering to amend his statement limiting his date to that of the constructive reduction to practice accomplished by filing his application on March 26, 1894, Cross began taking testimony on March 6, 1895, and continued the same at intervals until March 9, 1896. By his own deposition and those of others he undertook to prove that about September 1, 1893, he had made one segment of a coal-screen embodying the construction of the issue, which, with forty-seven others of a different construction, had been sold to and used by the Dodson Coal Company at Morea, Pa., in screening coal during the same month.

This testimony, without amendment duly made by the authority of the Commissioner of Patents, was inadmissible and entitled to no consideration. *Colhoun* v. *Hodgson*, 5 App. D. C. 21, 22.

In announcing the closing of his proofs on March 9, 1896, Cross gave notice that he reserved the right to apply either at or before the hearing for leave to file an amended preliminary statement in accordance with said proofs. This amendment was presented upon motion for leave on or about April 27, 1896, (after Phillips' rebuttal testimony had been taken), and was opposed by him. The proposed amendment alleged conception in April, 1890, instead of November, 1889, as alleged in the original, and claimed reduction to practice as early as September, 1893.

Briefly stated, the evidence referred to, and the consideration of which was sought to be secured by this amendment, tended to show, that about September 1, 1893, he had obtained an order from the Dodson Coal Company for forty-eight segments of punched plate screens, each of a certain dimension, to make four sections of twelve segments each for the usual revolving screen, and that a sketch was sent in by him with the order showing "staggered" or "zigzag" holes running across the segment. In these the long bars

between the rows of holes running from end to end were straight. The connecting-bars between the holes were bent or crimped alternately down and up across the segment.

This is the construction of the issue. When Cross came to the works he discovered that the plates had not been punched exactly as ordered. The staggered lines of holes ran from end to end instead of across the segment. Taking one of these segments he began to crimp the bars alternately up and down by bending them with a hammer. One of the workmen came to his assistance and finished the segment in the same way. To crimp the connecting-bars in and out (*i. e.*, up and down) was slow work, for but one could be bent at a time, because they were bent alternately in and out. Officers of the company came down to hurry the job for immediate shipment, and on account of the slow progress in the peculiar manner of crimping, ordered the remaining forty-seven segments to be crimped one way only. This was done, and the shipment was made and received and used by the party ordering them. Most of these segments, including the first one, were recovered from the scrapheap of the Dodson Company at different times during the taking of testimony by Cross.

Cross' counsel prepared his preliminary statement from the facts furnished by him. In accounting as a witness for his failure to claim reduction to practice in September, 1893, he said that he was in rather a hurry at the time, and thought the whole order ought to have been completed; that he did not know much about interferences, but his attorneys told him what he would have to state; that he was at a loss just how to state some facts, and did not have time to run the thing down and get at the facts; that when asked by his attorneys when he first made these segments he told them he remembered taking an order for the construction of the issue, but there was some trouble about it that he did not recollect, and he did not think that all of the order had

been filled. This occurred about December 1, 1894, four days before the statement was required to be filed under the notice of November 9. He further said that about two weeks before testifying (on March 6, 1895), he learned from his attorneys that even one completed segment of that order would be sufficient, and upon their suggestion he immediately began his search for it on the Dodson Company's premises. This information and suggestion of his attorneys (who had prepared the original statement for him) were communicated after the close of Phillips' first testimony.

The motion to amend was granted by the examiner, and on appeal his decision was first affirmed; but afterwards the Commissioner, following the decision in *Foster* v. *Bent*, C. D., 1896, p. 89, modified his decision, saying:

"To dispose of it finally in full accord with *Foster* v. *Bent* would require the examination of this entire record, but this may be done better at the hearing on the merits than now, and accordingly, with leave to Phillips to raise the subject-matter of this motion on final hearing, my former decision is affirmed."

Phillips had in the meantime also filed a motion to expunge from the record or suppress all of the testimony of Cross that was at variance with the allegations of his original preliminary statement.

Rule 110 of the Patent Office requires the preliminary statement to be made under oath, and specifies the facts that shall be set forth therein. One of these is the date of reduction to practice. The specification is followed by this admonition: "The preliminary statements should be carefully prepared, as the parties will be strictly held in their proofs to the date set up therein."

Rule 113 provides: "In case of material error arising through inadvertence or mistake, the statement may be corrected on motion (see Rule 153), upon showing to the satisfaction of the Commissioner that the correction is essential to the

ends of justice. The motion to correct the statement must be made, if possible, before the taking of any testimony, and as soon as practicable after discovery of the error."

In accordance with the final ruling of the Commissioner above recited, the question of the leave to amend was again raised before the examiner of interferences on the hearing of the case. After an elaborate review of the evidence he stated his conclusion, denying the motion to amend, in the following language:

"The preliminary statement was faulty, if at all, through the failure of the applicant to make suitable efforts to ascertain the facts, which he was required by the rule to set forth, and upon which his statement was predicated, and in the matter of amendment the rule was knowingly disregarded. The testimony closed before this motion was filed.

"It will be apparent that if the amendment may be made in this case it should be permitted in any and every case, and, as before suggested, the rule might as well be abrogated. It is said on behalf of the party making this motion that if a patent should issue to his competitor it would on the evidence adduced be declared invalid. That is possible, but I am clear that it will never be declared invalid unless the reasonable rules of practice provided for the conduct of proceedings in the courts are observed by the party whose rights are to be established and interests protected by such decree. In other words, to establish a right he must observe the rules provided for proceedings in that behalf. No man has just cause to complain if he falls short in obtaining what he conceives to be fairly due him, if he has negligently failed to take the requisite steps to that end, nor is he at liberty to determine arbitrarily for himself whether he will or not observe the rules prescribed to obtain relief. If this were a case in which there were doubts which I could resolve in favor of the applicant making this motion, I would not hesitate to give him the benefit of such doubts, but it does not belong to that class. His dis-

regard of the rule is palpable, obvious and open, and there is nothing left to do except to abolish the rule or compel its observance, and there is only one way of accomplishing the latter, and that is by attaching the penalty, which is to refuse to permit an amendment which will admit the testimony sought to be offered.    The courts are open, so if it occurs that applicant has lost, by neglect and refusal to comply with the just requirements of reasonable rules, what he conceives to be a right, he may by seeking a remedy in the courts and conforming to the law and rules of practice made in pursuance thereof obtain redress.    I am not clear that the evidence is at all conclusive, but I am clear that its presentation is in direct violation of the rules cited."

Upon appeal to the examiners in chief they held that "no regular appeal having been taken from the decision of the examiner of interferences on the interlocutory matter in question (the denial of the leave to amend), we must regard the same as *res judicata,* and treat the case as though the said statement had never been presented to the office for its consideration."

They, however, did examine the evidence concerning the alleged manufacture and use in September, 1893, of a segment embodying the construction of the issue, in considering the claim that Cross was using reasonable diligence in the matter of reduction to practice.

In denying that claim, they also said that the facts shown by the evidence, if true, did not amount to reduction to practice.    Upon appeal to the Commissioner, he treated the motion to amend as still open, and considered the entire record in its bearing thereon.    His conclusions were that Cross had first conceived the invention; that Phillips had reduced it to practice in November, 1893; that Cross' proof of manufacture and use in September, 1893, did not amount to reduction to practice; that Cross had not used reasonable diligence in reducing to practice in order to defeat Phillips, and that Cross had no right to amend his statement.

Having expressed the opinion that the evidence on behalf of Phillips is sufficient to establish his reduction to practice of the invention in November, 1893, the first question now to be determined is the error, assigned by Cross in his reasons of appeal, in the decision of the Commissioner affirming the denial of the motion to amend the preliminary statement.

Under the authority conferred upon the Commissioner of Patents to establish regulations for the conduct of proceedings in interference, Rules 110 and 113 were regularly ordained and promulgated and have long been in force. The requirement of specific preliminary statements by the contending parties under oath is a reasonable one, and experience has demonstrated its special adaptation to the conditions that ordinarily exist in cases of this character. *Smith and Thomas* v. *Cowles,* C. D. 1885, 12, 14; *Parker* v. *Appert,* 8 App. D. C. 270, 276; *Stevens* v. *Seher,* 11 App. D. C. 245, 251. In the last-mentioned case it was said:

"It is of the utmost importance that strictness be observed as to the dates furnished in preliminary statements required in cases of interference, for if parties were allowed to vary their dates at pleasure as to the time of discovery, invention or disclosure it would inevitably lead to the imputation of deception and bad faith practiced on the part of the party so changing his dates."

The dates of conception and reduction to practice are peculiarly within the knowledge of the inventor, and the facts by which they may be established are naturally difficult of contradiction by his adversary. Hence, it is quite important to the administration of justice in contests between them that he be required to state those dates with reasonable certainty before notice of the foundations of his adversary's claim.

These preliminary statements constitute what may be called the "pleadings" in the case, and to their allegations the evidence must respond.

Rule 113, aforesaid, permits the statement of either party to be amended where material error has been committed through inadvertence or mistake, and its correction is essential to the ends of justice; but requires that it shall be made as soon as practicable after the discovery of the error, and, if possible, before the taking of any testimony. This rule is likewise reasonable and just, and seems to conform as near as may be, considering the peculiar character of these interference cases, to the general rule prevailing in courts of equity. Story's Eq. Pl., Secs. 894, 905; 1 Encyc. Pl. & Pr. 478, 482.

In courts both of law and equity the right to amend is not an absolute one, but rests in the discretion of the court, and the exercise of this discretion is not reviewable unless it may be in case of its palpable abuse. *Walden* v. *Craig,* 9 Wheat. 576; *Wright* v. *Hollingsworth,* 1 Pet. 165, 168; *United States* v. *Buford,* 3 Pet. 12, 32; *Murphy* v. *Stewart,* 2 How. 263, 284; *Chapman* v. *Barney,* 129 U. S. 677, 681; *Gormly* v. *Bunyan,* 138 U. S. 623, 630; *Morris* v. *Wheat,* 11 App. D. C. 201, 213.

Necessarily, the allowance or refusal of leave to amend in an interference case rests in like manner in the discretion of the Commissioner of Patents, and it might be said for even a stronger reason, because he is vested with the authority to make the needful rules for the regulation of the practice of his office (not inconsistent, of course, with the provisions of the law) without the supervising power of an appellate tribunal. *In re Neill,* 11 App. D. C. 584, 588.

As was said in that case: "The practice of that office is not a matter for our regulation, and irregularities therein, even if patent on the record, would only be considered when some substantial right of the party has been denied, and the point has been saved for presentation on appeal."

Appeals do not lie to this court from all or any preliminary decisions in matters of interference though seriously affecting the rights of the parties, but only from those

wherein the priority of the claim to the invention has been finally awarded. *Westinghouse* v. *Duncan*, 2 App. D. C. 131, 134.

If, then, the exercise of the discretion of the Commissioner in the matter of allowing and refusing leave to amend preliminary statements be subject to review at all, it must be confined to those cases where the question comes up properly with the appeal from the decision on the merits and where it can be made clearly to appear that this discretion has been abused to the extent of causing a palpable miscarriage of justice.

Notwithstanding the decision of the examiners in chief, the Commissioner considered the motion for leave to amend as open, and determine it upon full consideration of all of the evidence, and one of the appellant's reasons of appeal is founded on its denial by him.

Under these conditions, the question must be considered as involved in this appeal, and has therefore received full consideration.

The result of that consideration is, that, assuming the statement of Cross in respect of the cause of his omission to allege this earlier reduction to practice in his preliminary statement to be true, and giving him the benefit of every reasonable inference that can be deduced therefrom, in the light of the evidence of the manufacture, sale, and use of the one segment in September, 1893, we are unable to discover any abuse of discretion in the denial of his motion to amend. On the other hand, we are inclined to agree with the examiner of interferences in the reasons given, as hereinabove quoted, for that denial.

Under this view of the case we think it would be going beyond our province to indulge in any expression of opinion whatever, founded upon the necessarily rejected evidence, in respect of the sufficiency of that evidence to establish reduction to practice earlier than the date alleged in his preliminary statement.

The last point remaining to be considered is the appellant's reason of appeal, to the effect that the Commissioner erred in holding that Cross had not established diligence entitling him to the award of priority.

Now, assuming that Cross conceived the invention in 1889 or 1890 and made the model illustrating it on May 3, 1890, and that he was in a state of extreme poverty until the time that he entered the service of the Hendrick Manufacturing Company as a traveling salesman on January 1, 1892, the time that elapsed between that date and the date of his application for patent, March 26, 1894, remains to be accounted for.

It appears that between May, 1893, and the date of the application for the patent in controversy Cross made several applications for patents upon improvements in coal-screens, though it seems that he had some difficulty in obtaining the money to pay the necessary charges involved.

The Hendrick Manufacturing Company, by which he was employed as traveling salesman, January 1, 1892, was a corporation of apparently large means. It had been engaged in the manufacture of several kinds of screens in use in coal-breakers, among them those made of punched steel plate that were coming into use in some places as substitutes for the then used woven-wire and cast iron or steel segment-screens. It also manufactured, upon orders taken, the crimped segments of the construction shown in Cross' patent, No. 513,890, of January 30, 1894, application of August 14, 1893, called the "opposite mesh." It appears from his own testimony that he had the confidence of the Hendrick Company from the time that he entered its service, and that it would generally manufacture the screen-segments suggested by him when practicable to do so. The company had a contract with Cross for the manufacture and sale of his crimped "opposite mesh" plate and appears to have had some kind of interest in the invention of the issue, the nature of which was not disclosed in the evidence. The intervening time

between conception of the invention and the application for patent was not occupied in perfecting it, for the construction of the issue is identical with the exhibit-model of May 3, 1890. All that remained to be done was to construct segments of the proper size and put enough of them in use to test their efficiency. This, we think it reasonable to suppose, the Hendrick Manufacturing Company would have done, if requested, at any time, at least during the year 1893. The evidence shows no reasonable excuse for the long delay . in doing this. That he may not have anticipated the entry of a rival in the same field is no excuse for delay (*Dodge* v. *Fowler*, 11 App. D. C. 592, 598), and, if nothing else he might have filed an application, as he did in other cases, to secure the benefit of his invention. *Dodge* v. *Fowler, supra.*

Nor is the belief which he may have had that the construction of the issue had been covered in the claims of the application for Patent No. 513,890 a good excuse for non-action. *Dodge* v. *Fowler, supra.*

When connected with other reasonable and well-established circumstances tending to excuse delay, the belief, in good faith and upon reasonable foundation, that the invention is involved in some previous construction, or can be covered by the claims of a pending application, might be entitled to some weight in determining the question of negligence.

But we find no such case here. Moreover, it appears from the testimony of Hendrick, the president, and Troutwein, the mechanical engineer and superintendent, of the Hendrick Manufacturing Company, that when Cross exhibited to them his Patent No. 513,890 they were of the opinion and convinced him that it did not cover the construction of this issue. At and before this date the segments of the issue had been manufactured and sold in considerable quantities by the Clinton Wire Cloth Company and had probably been seen by Cross at one or more collieries.

An attempt has been made by the appellee to show from

the drawings, specification, and claims of the application in No. 513,890, and by evidence of other facts and circumstances bearing on the point, that the construction of the issue was not in the contemplation of Cross or the solicitor who obtained that patent for him. After what has been said above we think it unnecessary to consume time in its consideration.

We are of the opinion that the decision appealed from should be affirmed, and so certified to the Commissioner of Patents in the terms of the law regulating appeals in such cases. It is so ordered.                        *Affirmed.*